LOÍZA SUGAR COMPANY, Plaintiff and Appellee, *v.* JORGE ZEQUEIRA BENÍTEZ, Defendant and Appellant.

No. 8787. Argued March 17, 1944.—Decided July 3, 1944.

*Celestino Iriarte, F. Fcrnández Cuyar, H. González Blanes,* and *E. Márquez Huertas* for appellant. *Sifre, Franceschi & Sifre* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

In this case the fundamental issues involved are two. First, whether by virtue of a power of attorney granted by the defendant, Jorge Zequeira, in favor of his brother Javier Zequeira, the latter was authorized, in settling certain suits, to execute a contract in acknowledgment of a servitude in plaintiff's favor, and, second, whether defendant ratified said contract by his acts. The facts are as follows:

Javier and Jorge Zequeira Benítez acquired in common ownership by inheritance from their father Javier Zequeira, the Santa Inés estate, of about 512 *cuerdas,* situated in the ward of El Pueblo, El Cacique place, in Loíza, adjoining which there is an estate of the Loíza Sugar Co., defendant herein. In 1914, being at the time owner of his share in the above-mentioned estate, Jorge Zequeira Benítez, defendant, went to the United States with the purpose of studying medicine in a university in the city of Chicago. Long before 1914 the plaintiff had built, at its expense, and on different dates, several railroad tracks which entered and crossed at several places the above-mentioned estate of Santa Inés. In 1916, while in Chicago, the defendant, through his lawyer, Ernesto Benítez, filed two suits in the District Court of San Juan against the plaintiff herein, in which his brother Javier Zequeira Benítez was included as defendant on his refusal to be included as plaintiff. One of these suits prayed for the removal of the railroad tracks already mentioned and the other was for compensation for the damages caused by maintaining said tracks. We copy the remaining facts from the long and well-reasoned opinion of the district judge:

". . . The core of both suits was that the Loíza Sugar Company had laid said tracks and has been operating its trains on them with no right whatsoever, since there did not exist any contract of servitude between Jorge Zequeira and the Loíza Sugar Company. The first suit, entitled 'denial of servitude,' ended with judgment in favor of the defendant and was appealed by Jorge Zequeira to the Supreme Court. In the second suit a demurrer to the complaint had been filed which was pending decision. It was at that time that defendant Jorge Zequeira granted in Chicago the power of attorney in favor of his brother Javier, which is copied in the complaint, and which in its pertinent part says as follows:

" ' . . . by these presents make, constitute and appoint my brother, Javier Zequeira, of Loíza, Puerto Rico, my true and lawful attorney for me and in my name, place and stead and for my use and benefit to grant, bargain and to make all kinds of contracts, and specially to make contracts of lease for ten years or more of the Santa Inés estate, . . . to whom and upon such terms as my said brother Javier Zequeira may deem best all my right, title, and interest, estate and generally to say, do, act, transfer, determine, accomplish and finish all matters and things whatsoever relating to the said finca Santa Inés, as fully amply and effectually to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying, confirming and holding valid all that my said brother or his substitute shall lawfully do or cause to be done by virtue of these presents.'

"Upon receiving this power of attorney Javier Zequeira appeared with Enrique González Rodríguez, acting President of the Company, before Notary Eduardo Acuña Aybar, and on December 24, 1919, executed a private deed, in which, after copying in full the power of attorney above mentioned and stating that Javier as well as his principal, Jorge, were owners of the Santa Inés estate, and describing in detail the different railroad tracks crossing said estate, and González Rodríguez stating that the plaintiff was the owner of the Canóvanas Central, as well as of the estate where it was situated, and after mentioning the suits brought by Jorge Zequeira against the Loíza Sugar Company, it was stated 'that notwithstanding the judgment rendered in the first suit already described, the litigating parties, desiring to settle their differences without awaiting the final results in both suits and of the suits which these might promote, have made an agreement, upon the conditions hereinafter stated, to which Javier Zequeira Benítez, as a necessary party, agrees, in his

capacity as joint owner of half the estate which is to be affected by the terms of said compromise, which conditions are as follows, to wit:' it being thereupon stipulated that the Zequeira Brothers accepted and acknowledged 'that the Loíza Sugar Co. and its predecessors in interest, since indeterminate dates and at their exclusive expense, have built on said Santa Inés estate the railroad tracks, branch roads, and side tracks that are described in the foregoing fourth clause of this deed, and has used them in operating its private railroad for the transportation of cane and other materials to its factory 'Canóvanas', and, as a legal matter, they equally acknowledge and declare that such construction of tracks, and such upkeep of the said railroad in operation, had been effected by said Loíza Sugar Co. and its successors in interest, under a legal title binding on the owners of the Santa Inés estate, in reference to which title, and as in effect of their acknowledgment, they agree to accept it as totally cured of any defect in its constitution. SECOND.—The same Zequeira Benítez brothers, in their aforesaid capacity as sole owners of the said estate, shall constitute on it and in favor of the Loíza Sugar Co. and its successors in interest, a servitude of railroad right of way, in accordance with the tracks, branch roads, and side tracks now existing, which servitude will exist during all the time it suits the Loíza Sugar Co., subject to the conditions of payment thereof of an annual sum of six hundred dollars to the owners of the servient tenement, and of keeping a gate at the eastern and western boundaries of the estate at those places of entrance and exit of the main track, THIRD.—As price or consideration of the acknowledgments and confirmation of title appearing in part one, as well as of the use and occupation of lands by the track during all the time up to this date, and as compensation for whatever damages may have been caused to the estate of Santa Inés, or to its owners and possessors, on account of such tracks, the Loíza Sugar Co. will pay to the Zequeira brothers five thousand two hundred dollars to be distributed as follows: two thousand eight hundred dollars covering all the time comprised from the indeterminate date of the installation of said tracks to the thirty-first day of December of nineteen hundred and fifteen, and two thousand four hundred dollars covering, at the rate of six hundred dollars a year, the four years from January the first, nineteen hundred and sixteen to the thirty-first of December of the current year. FOURTH.—Jorge Zequeira shall abandon, at his exclusive cost, the two suits now pending referred to in the preceding sixth and seventh parts of this deed. Consequently, in execution of said agreement the appearing

parties established a perpetual servitude in favor of that estate where the Canóvanas Central is situated, and authorized said corporation to occupy a certain strip of land of the estate of Santa Inés to operate on it a fixed railroad line, the company committing itself to satisfy the indemnities agreed upon. Javier Zequeira stated in the deed that he had already received the sum of $5,200 therein agreed upon and that the contract had been executed 'within the ample and general authority to determine and finish all matters and things whatsoever relating to the Santa Inés estate, as included in the last clause of the power of attorney of his principal, Jorge Zequeira, according to specific instructions communicated by him.' " (Italics ours.)

In the case at bar the defendant admitted in his answer that he had received a certain amount of money from the plaintiff as "indemnity" for the use of his estate and that by virtue of said payment the defendant had abandoned the suits he had filed against the plaintiff.

The lower court decided that, according to the second paragraph §1604 of the Civil Code (1930 ed.), to the effect that "In order to compromise, alienate, mortgage, or to execute any other act of strict ownership, an express commission is required," the power of attorney copied above was not by itself sufficient to authorize Javier Zequeira Benítez to establish a perpetual servitude in favor of the plaintiff. Nevertheless, it reached the conclusion that said power expressly authorized Javier Zequeira Benítez to accomplish the settlement of suits relating to the Santa Inés estate and that consequently, the contract of servitude was valid, since it had been executed in the settlement of the suits mentioned above. Likewise it reached the conclusion that, even assuming that said contract was not valid on being executed, it had been confirmed and ratified by virtue of the defendant's subsequent acts. Appellant points out as errors in the appeal the two conclusions of law stated above.

▆▆ The lower court did not err in deciding that the power of attorney granted by the defendant was not sufficient to authorize his brother to establish a perpetual serv-

itude in plaintiff's favor. A power of attorney is subject to strict construction, and the establishment of a perpetual servitude being an act of strict ownership (XI Manresa, p. 450, 1905 ed.), under the provisions of §1604 of the Civil Code, *supra,* the grant of an express commission was an indispensable requisite in order that the agent could establish said servitude. Cf. *Font* v. *Registrar,* 57 P.R.R. 635; *Lókpez* v. *Lókpez,* 61 P.R.R. 596. We do not deem it necessary to decide whether, because of the fact that the power of attorney authorized the agent to settle suits relating to the estate of Santa Inés, he could establish the servitude, since we believe that the lower court did not err in deciding that the contract executed by the agent was ratified by the defendant. The conclusions of fact at which said court arrived are amply supported by the evidence.

The lower court found that the Loíza Sugar Co. completely fulfilled the contract of settlement and establishment of servitude, and that it paid Javier Zequeira the sums agreed upon; that in the year 1928 Jorge Zequeira returned to Puerto Rico, and, according to his own testimony, either in said year or in 1929, held a conference with the Manager of the Central in his office, and was there shown the contract of servitude, which is copied in the complaint; that thereupon he protested, adducing that he had never granted a power for it, though he admitted that he had been receiving $300 per year to which he was entitled according to the contract, but he alleged that he had been receiving this "track service" across his estate during its lease by the plaintiff. After that conversation with the manager, defendant said that he continued receiving the $300 "but only with the understanding that he did so during the lease which covered the estate." However, it is to be noted as a significant fact which contradicts the defendant, that up to July 7, 1932, the estate had not been held under a lease by the plaintiff herein, since it was not until the latter date that the Cen-

tral acquired, as a sublessee, the lease held by José Iturregui; therefore, before 1932 said Central did not have to pay the defendant any sum for rental of the estate, and whatever sums it paid, were in consideration of ‚the use of the easement according to the contract of settlement. Plaintiff always was careful to insert in the checks it made for its payments, first to Javier and afterwards to defendant, that said payments were made in consideration of the servitude of railroad right of way across the estate of Santa Inés. In three of the checks issued in defendant's favor and cashed by him, dated December 30, 1931, December 30, 1932, and December 29, 1933, which were introduced in evidence, it was clearly stated that they were issued in payment of the above-mentioned servitude of passage; one of these checks, that of December 30, 1931, was issued to and cashed by defendant when plaintiff had no lease on the estate and, consequently, had no reason to make such a payment to defendant.

In the recent case of *Dooley* v. *Pantoja,* 61 P.R.R. 619, we said:

"The second paragraph of §1618 of our Civil Code provides that 'A principal is liable in so far as the agent has exceeded his power, only when he ratifies the same expressly or in an implied manner.' Perhaps the best method of determining that a principal has ratified the acts of an unauthorized agent is by establishing that the principal has received the benefits or fruits of the transaction in question (Restatement, Agency, §98). . . .

"But receipt of the fruits of the transaction in question is not the only method of ratification by a principal of the unauthorized acts of his agent. If a principal chooses to conduct himself so that his acts and all the circumstances spell out an 'affirmance . . . of a prior act which did not bind him but which was done, or professedly done on his account . . . the act . . . is given effect as if originally authorized by him' (Restatement, Agency, §82). Cf. *Lókpez* v. *Lókpez,* 61 P.R.R. 596, decided March 25, 1943. Provided such conduct unequivocally constitutes ratification, such a principal cannot at a much later date disown his own conduct upon a belated discovery

that his agent had never turned over the fruits of the transaction. (Citing authorities.)".

Appellant complains that the trial judge founa that Jorge Zequeira "admitted that he had received the sum of $300 annually," and on the contrary urges that from 1919 to 1931 it was Javier Zequeira who received said $300 and that since 1931, the year in which he began receiving said $300, according to his own testimony, he received them as "track service" (*servicio de vías*) across the estate, for the duration of the lease. Thus we see that, on page 13 of his brief, appellant categorically denies that Jorge Zequeira received any sum prior to 1931, since he says that "the Central has not paid Jorge Zequeira one cent from 1919 to 1931." However, on pages 14 and 15 of his brief, in trying to explain the very significant fact, stated by the trial judge, that it was not until 1932 that the Central acquired the lease of the Santa Inés estate (it is to be remembered that appellant testified that he began receiving the sum of $300 as rental from *1931* on) appellant says the following: "It is inescapably true that the Central had been levying its tracks over lands belonging to Jorge Zequeira before 1932, and that by such use of the property the Central was found to pay *a certain sum of money to Jorge Zequeira,* so that, although said Central did not have to pay anything "as rental," it did have to pay something for the railroad right of way and the use of property not their own." (Italics ours.) This assertion is clearly an admission that Jorge Zequeira received the $300 from the Central long before 1932. How did he receive it? Appellant himself has told us already; from 1919 to 1931 the Central paid the sum to his brother Javier. Hence his brother Javier must have given him said sum to make it possible for him to receive it, and going further into this matter, it follows with full clarity in the light of what we said in *Dooley* v. *Pantoja, supra,* that Jorge Zequeira must have ratified the contract of servitude. Let us

see why. In 1928, upon arriving in Puerto Rico, as the appellant himself alleged, he became fully cognizant of the contract of servitude, as well as of all the rights and obligations presumptively established under it, so much so that he held a conference with Mr. A. Cochran, Manager of the Central, to that effect. To this fact we must add that Jorge Zequeira, even though returning to Puerto Rico in 1928, did not look after the estate nor his interests in it until 1931 when his brother Javier died. To that effect he testified as follows (p. 76, Tr. of Ev.) :

"Q. When did you start receiving money coming from said 'servicio de vía,' that you remember?

"A. Well, that I remember, since my brother died in 1931, when I sent in the first receipt.

"Q. Before that you did not receive any money?

"A. Never, I considered it received because my manager received it."

From all this it clearly appears that from 1928 to 1931 Javier Zequeira was the authorized manager of the defendant in connection with the Santa Inés estate, and that the defendant, even though he had full knowledge of the terms of the contract of servitude, considered money received because his manager received it. And if we examine Exhibits 7 and 8 of the plaintiff (pp. 98 and 99, Tr. of Ev.) we see that Exhibit 7 is a check dated December 28, 1929, for the sum of $600 to the order of Javier Zequeira, and that Exhibit 8 is another check dated August 16, 1930, for the sum of $582 to the order of Javier Zequeira. It appears from both checks that the consideration for which the payment is made is on account of a servitude of passage across the estate of Santa Inés, and on the back of these checks it is stated "accepted and endorsed in payment of the account expressed on the face hereof," and then follows Javier Zequeira's signature. As plaintiff well states in its brief: "If Jorge repudiated the contract as he alleges, why did he permit his manager

838

to accept these payments in the expressed form?" And why, we add, did he receive said payments, as we have already seen that he did, if his manager had accepted them for such consideration, if it be true that he was not authorized to accept them? But there is still more. As we have already said, on December 30, 1931, plaintiff, in a check issued in favor of dedendant Jorge Zequeira for the sum of $300, stated on its margin the following:

"Consideration of the Payment. Santa Inés estate. Half the servitude of railroad right of way across the estate, for the forthcoming year, due December 31, 1932."

And it is stated on the back of said check:

"Accepted and endorsed in payment of the account expressed on the face hereof.

"Credit to my account with the N. Y. National City Bank. (Sgd.) Dr. Jorge Zequeira."

Thus, here it is no longer the manager who endorses the check accepting the payment of the account expressed on the face thereof. It is the defendant himself who signs, without any objection whatsoever. In our opinion, this evidence, together with the rest of the defendant's acts since its return to Puerto Rico, is sufficient to conclude, in accordance with the doctrine set forth in the case of Dooley, *supra*, that the defendant ratified the contract of servitude executed by his brother and that the judgment appealed from should be affirmed.